UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAKOB P., | ) | Case No. 5:24-cv-00240-SP |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| LELAND DUDEK, Acting Commissioner of Social Security Administration, | ) | |
| Defendant. | ) | |

## I.
## INTRODUCTION

On February 1, 2024, plaintiff Jakob P. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of supplemental security income ("SSI"). The parties have fully briefed the issues in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents four disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly considered the medical evidence and opinions; (2) whether the ALJ properly considered plaintiff's subjective testimony; (3) whether the ALJ

1

properly considered lay evidence; and (4) whether the ALJ erred at step five.[1]  Plaintiff's Brief in Support of Complaint ("P. Mem.") at 3-23; see Defendant's Brief ("D. Mem.") at 3-12.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered the medical evidence, plaintiff's subjective testimony, and the lay evidence, and the ALJ's step five analysis was supported by substantial evidence. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.
## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff was 18 years old on his alleged September 21, 2020 onset date.  AR at 54. Plaintiff is a high school graduate and has no past relevant work.  AR at 49, 60, 330.

On September 21, 2020, plaintiff filed an application for SSI due to autism.  AR at 55.  The application was denied initially and upon reconsideration, after which plaintiff filed a request for a hearing.  AR at 88-92, 97-101, 122-24.

On December 16, 2022, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ.  AR at 33-53.  The ALJ also heard testimony from Sonia Peterson, a vocational expert.  AR at 49-52.  On December 30, 2022, the ALJ denied plaintiff's claim for benefits.  AR at 17-27.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since September 21, 2020, the application date.  AR at 19.

At step two, the ALJ found plaintiff suffered from the following severe impairments: autism spectrum disorder; major depressive disorder; and social anxiety disorder.  Id.

---

[1]   Although plaintiff only enumerates two issues in dispute, he raises three separate issues under his second issue.  See P. Mem. at 13-23.

1    At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. AR at 20.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"), and determined plaintiff had the RFC to perform a full range of work at all exertional levels, but was limited to: understanding, remembering, and carrying out simple instructions; occasional contact with the public, coworkers, and supervisors; and occasional changes in a routine work setting. AR at 22.

The ALJ found, at step four, that plaintiff had no past relevant work. AR at 26.

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including laundry worker II, hospital cleaner, and industrial sweeper. AR at 26-27. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. AR at 27.

Plaintiff filed a timely request for review of the ALJ's decision, which the Appeals Council denied. AR at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration ("SSA") must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a

reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## DISCUSSION

### A. The ALJ Properly Considered the Medical Evidence

Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly consider the medical evidence and incorporate the medical opinions. P. Mem. at 3-13. Specifically, plaintiff contends the ALJ failed to translate and incorporate the consultative examiner's and state agency physician's opined moderate limitations, and also failed to consider a psychological assessment.

Residual functional capacity is what one can "still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence, including non-severe impairments. 20 C.F.R. § 416.945(a)(1)-(2); *see* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

Among the evidence an ALJ relies on in an RFC assessment are medical evidence and opinions. 20 C.F.R. § 416.945(a)(3). An ALJ considers the persuasiveness of the

medical opinions and findings based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the medical opinion. 20 C.F.R. § 416.920c(b)-(c); *see Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022). The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). The ALJ "must 'articulate . . . how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source . . . and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(b)(2)). The ALJ may, but is not required to, explain how she or he considered the other three factors. 20 C.F.R. § 416.920c(b)(2). But when two or more medical opinions "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is then required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 416.920c(b)(3).

    1. **The Medical Opinions**

        a. **Dr. Clifford Taylor**

Dr. Clifford Taylor, a consultative psychologist, examined plaintiff on January 27, 2021. AR at 329-35. Dr. Taylor observed, among other things, that plaintiff: was very anxious; had fair rapport; demonstrated deficits in language; had linear, logical, and organized thought process; could repeat seven digits forwards, three digits backward, and five digits sequenced in order; could add and subtract money; and had fair insight and judgment. *See* AR at 331-32. Plaintiff scored primarily average on the Wechsler Adult Intelligence Scale and Memory Scale. AR at 332-33. Taylor diagnosed plaintiff with autism spectrum disorder with accompanying language disorder and without accompanying intellectual disability. AR at 333. Based on the examination, plaintiff's reported history, and tests, Dr. Taylor opined plaintiff: could perform simple and repetitive work and maintain regular work attendance; was mildly impaired in his ability to perform detailed and complex work tasks; and moderately impaired in his ability to

perform work activities on a consistent basis, perform work activities without special or additional supervision, complete a normal workday or workweek without interruptions from a psychiatric condition, accept instructions from supervisors and authority figures, interact with coworkers and the public, and deal with the usual stresses in competitive work settings.  AR at 334.

### b. State Agency Physicians

Two state agency physicians, Dr. Brady Dalton and Dr. R. Paxton, reviewed plaintiff's medical records and issued administrative medical findings.  AR at 59-65, 76-84.  Dr. Dalton and Dr. Paxton both determined plaintiff had mild and moderate limitations in the Paragraph B criteria.  AR at 60, 78.  The state agency physicians, opined plaintiff was not significantly limited in his ability to carry out short and simple instructions, accept instructions and respond appropriate to criticism from supervisors, and maintain socially appropriate behavior; and was moderately limited in his ability to, among other things carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others, complete a normal workday/week, and respond appropriately to changes.  *See* AR at 62-65, 81-83.  The state agency physicians opined plaintiff could: carry out simple and detailed instructions; follow simple work-like procedures; make simple work-related decisions; sustain attention throughout extended periods of time (up to two hours at a time); perform at a consistent pace particularly if he is engaged in a simple, repetitive task; maintain a regular schedule; maintain appropriate behavior in a context of limited peer and public interaction; and accept simple instructions and respond appropriately to feedback from supervisors.  AR at 63-64, 82-83.  The state agency physicians further found plaintiff would work best in environments with predictable work tasks and with minimal social contacts with others that do not require a great deal of decision making or goal setting.  AR at 65, 84.

### 2. **Other Medical Evidence**

On March 13, 2020, Dr. Sara deLeon, a psychologist, evaluated plaintiff to determine his eligibility for services from the Inland Counties Regional Center, Inc.[2] *See* AR at 314. Dr. deLeon spoke to plaintiff and his grandmother, and performed cognitive, social/emotional, and adaptive behavior tests. *See* AR at 312-18. Plaintiff scored in the average to above average range for cognitive functioning. *See* AR at 315-16. Plaintiff's social/emotional functioning scores, which reflected some deficits in communication skills and with reciprocal social interaction, fell in the mild to moderate symptoms for autism range and classified him as in the autism spectrum. *See* AR at 316-17. The scores from the adaptive functioning tests, which was based on information provided by plaintiff and his grandmother, fell in the low range. *See* AR at 315-16, 318. Among the information plaintiff and his grandmother provided was that plaintiff: could follow directions with reminders but had difficulty following "if-then" instructions; was adept at using electronic devices; could complete chores with a visual schedule; does not travel to destinations independently; had fewer peer relationships than would be accepted for his age and developmental level; struggled to respond appropriately to verbal and nonverbal cues in groups; and had difficulty coping with reasonable changes in routine. AR at 318. Based on the evaluation, Dr. deLeon opined plaintiff met the DMV-V criteria for a diagnosis of autism spectrum disorder but not for intellectual disability, and was eligible for services. *See* AR at 312. In addition to services, Dr. deLeon recommended plaintiff explore vocational and independent living services and supports with consideration to her report. *See* AR at 313.

//

---

[2] Plaintiff does not argue that Dr. deLeon's assessment constitutes a medical opinion for which the ALJ must perform a persuasiveness evaluation. The Ninth Circuit has held that claimants, when represented, "must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (as amended). As such, plaintiff has waived this argument.

### 3. **The ALJ Findings**

In reaching her RFC determination, the ALJ considered the medical evidence and found Dr. Taylor's opinion and the state agency physicians' prior administrative findings highly persuasive. AR at 25.

Plaintiff argues that despite finding Dr. Taylor's opinion and the state agency physicians' prior administrative findings highly persuasive, the ALJ failed to adequately incorporate all of their opined moderate limitations, including moderate limitations in his ability to perform work activity on a consistent basis and within a schedule, perform work activity without additional supervision, complete a normal workday and/or workweek without interruptions from psychologically based symptoms, deal with the usual stresses of competitive employment, maintain regular attendance, be punctual, be aware of hazards, travel to unfamiliar places, use public transportation, set goals, and make plans independent of others. P. Mem. at 9-11. Contrary to plaintiff's contention, however, the ALJ's RFC determination adequately incorporates the opined moderate limitations.

It is an ALJ's responsibility to translate medical opinions into concrete, functional limitations. *See Rounds v. Comm'r*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (ALJ translated claimant's condition into concrete restrictions). The translation of the limitations must be consistent or supported by the evidence in the record. *Stubbs-Danielson*, 539 F.3d at 1174 ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."). An ALJ errs when he fails to include all credible limitations in an RFC assessment. *See Bagby v. Comm'r*, 606 F. App'x 888, 890 (9th Cir. 2015).

As an initial matter, the SSA defines a "moderate" limitation to mean "[t]here is more than a slight limitation in this area, but the individual can still function

8

satisfactorily." *Fergerson v. Berryhill*, 2017 WL 5054690, at *3 (C.D. Cal. Nov. 1, 2017) (quoting Office of Disability Adjudication and Review, Social Security Administration, Form HA-1152-UC, Medical Source Statement of Ability to Do Work-Related Activities (Mental)). Dr. Taylor did not quantify any of his moderate limitations, but because he is an SSA consultative examiner, presumably his use of "moderate" was consistent with the SSA definition. *See, e.g.*, *see Alicia M. v. O'Malley*, 2024 WL 3304519, at *9 (C.D. Cal. Mar. 8, 2024) (consultative examiner, who did not provide another definition of "moderate," presumably used the term consistent with the SSA's definition); *Rose M. E. v. Saul*, 2021 WL 1612091, at *3 (C.D. Cal. Apr. 26, 2021) (same). Consequently, the ALJ could have reasonably understood Dr. Taylor's opined moderate limitations to mean that plaintiff could still function satisfactorily in those areas.[3]

      Like Dr. Taylor, the state agency physicians, whose findings the ALJ also found highly persuasive, opined similar moderate limitations. The state agency physicians further explained that despite these moderate limitations, plaintiff had sufficient ability to, among other things: carry out simple and detailed instructions; sustain attention up to two hours at a time; perform at a consistent pace, particularly if engaged in a simple, repetitive task; and maintain a regular work schedule. *See* AR at 63-64, 82-83. The state agency physicians additionally opined that given plaintiff's moderate limitations, plaintiff would "work best in environments with predictable work tasks and with minimal social contacts with others that do not require a great deal of decision making or goal setting." AR at 65, 84.

      The ALJ assessed plaintiff's RFC consistent with the opined limitations, finding plaintiff could: understand, remember, and carry out simple instructions; have occasional contact with the public, coworkers, and supervisors; and deal with occasional changes in

---

[3] Plaintiff also contends Dr. Taylor's summary of plaintiff's activities of daily living was inaccurate, but does not identify what was misstated or mischaracterized. P. Mem. at 8.

a routine work setting. AR at 22. The ALJ's RFC determination therefore adequately captured all of the opined moderate limitations and was supported by substantial evidence. *See Stubbs-Danielson*, 539 F.3d at 1174 (ALJ properly relied on state agency physicians' translations of mental limitations into concrete restrictions); *see, e.g., French v. Saul*, 2020 WL 5249626, at *2 (E.D. Cal. Sept. 3, 2020) (the ALJ's translation of moderate limitations in concentration, persistence, and pace into simple, routine work was supported by substantial evidence as he relied on doctors' opinions to reach that conclusion); *Jacque M. v. Saul*, 2019 WL 6893965, at * (C.D. Cal. Dec. 18, 2019) (RFC determination consistent with consultative physician's opinion that the plaintiff was capable of completing a normal workday/workweek if limited to simple tasks); *Needham v. Berryhill*, 2019 WL 5626641, at * 11 (N.D. Cal. Oct. 31, 2019) (ALJ permissibly relied on state agency physicians' translation of moderate limitations in social functioning, attendance, and ability to do work without special supervision to a restriction to simple work).

Plaintiff also argues that the ALJ failed to consider other medical evidence, namely Dr. deLeon's statement that he "has difficulty coping with reasonable changes in routine." P. Mem. at 6; *see* AR at 318. Plaintiff asserts the ALJ's limitation to occasional changes in a routine work setting does not adequately incorporate Dr. deLeon's statement. P. Mem. at 6. Contrary to plaintiff's contention, the ALJ engaged in a lengthy discussion about Dr. deLeon's assessment. *See* AR at 23. Notwithstanding the fact that it is unclear whether Dr. deLeon's statement was an assessment about plaintiff's capabilities or simply relaying what plaintiff and his grandmother told her, the ALJ clearly considered plaintiff's difficulties with changes in routine and incorporated it in the RFC. Plaintiff's argument that a limitation to occasional changes in a routine work setting does not adequately encompass "difficulty coping with reasonable changes in routine" is wholly unsupported. Indeed, plaintiff's argument rests solely on his own belief that he is incapable of handling occasional changes.

Accordingly, the ALJ properly considered all of the medical opinions and evidence, and her RFC assessment is supported by substantial evidence.

B. **The ALJ Properly Considered Plaintiff's Subjective Symptom Testimony**

Plaintiff contends the ALJ failed to properly consider his subjective statements. P. Mem. at 13-18. Specifically, plaintiff asserts the ALJ failed to consider all of his statements in the record and then cited only the lack of supporting objective evidence as a basis for discounting his testimony, which by itself was insufficient. *See id.*

The court looks to SSR 16-3p for guidance on evaluating plaintiff's alleged symptoms. In adopting SSR 16-3p, the Social Security Administration sought to "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).

> [SSR 16-3p] makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms, and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (cleaned up).

To evaluate a claimant's symptom testimony, the ALJ engages in a two-step analysis. *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (citing *Trevizo*, 871 F.3d at 678). First, the ALJ must determine whether the claimant produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* Second, if plaintiff satisfies the first step, and there is no evidence of malingering, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which they limit his ability to perform work-related activities. *Id.*

In assessing intensity and persistence, the ALJ may consider: the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating

and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; other treatment received; other measures used to relieve the symptoms; and other factors concerning the claimant's functional limitations and restrictions due to the symptoms. *Id.* (citing 20 C.F.R. § 416.929); SSR 16-3p at *7-*8; *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). To reject the claimant's subjective symptom statements at step two, the ALJ must provide "specific, clear, and convincing" reasons, supported by substantial evidence in the record, for doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281, 1283-84.

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR at 24. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's testimony. The ALJ discounted plaintiff's testimony because his statements were not entirely consistent with the medical and non-medical evidence, specifically: (1) his statements were not entirely consistent with his high level of intellectual ability; (2) medication helped manage his anxiety; and (3) his alleged limitations were inconsistent with his activities of daily living. *See* AR at 24-25; *see also Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (lack of objective [findings] supporting symptoms is one factor in evaluating testimony).

In an October 27, 2020 Function Report, plaintiff wrote his daily activities include: doing household chores; talking to and playing games with friends; helping his sister with schoolwork; and preparing meals and learning to cook. *See* AR at 243-47. Plaintiff reported he was able to handle money and follow written and spoken directions. *See* AR at 246, 248.

At the December 16, 2022 hearing, plaintiff testified that he did not think he could perform full time work because he had difficulty understanding directions and suffered from anxiety. AR at 40. Plaintiff testified that his anxiety manifested when his routine changed because he was scared of what was going to happen, but it was "pretty

sporadic." *See* AR at 40-41. Plaintiff specifically identified certain circumstances that caused him anxiety, including when he is told he has to suddenly go somewhere, waiting too long, interacting with strangers, or when items in the house are rearranged. *See* AR at 41, 44, 48-49. Plaintiff was scared of driving and living alone. *See* AR at 43-44, 47. Plaintiff testified he goes places with his friends, could go to the store and purchase items if he knows where everything is, has both school and online friends, and typically hung out with friends in person or online. *See* AR at 44-47. Plaintiff had a coach who was working with him to develop skills such as shopping, budgeting, and setting up appointments. *See* AR at 43, 47.

As an initial matter, plaintiff argues the ALJ erred because she failed to consider all of the subjective evidence. P. Mem. at 14. In the decision, the ALJ discussed plaintiff's hearing testimony and his statements to Dr. deLeon and Dr. Taylor, but not his Function Report. *See* AR at 23-25. An ALJ is required to consider all relevant evidence but is not required to discuss every piece of evidence in the record. *See Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022); *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). To the extent the ALJ was required to discuss the Function Report, any failure to do so was harmless error since plaintiff's statements in the Function Report are similar to his hearing testimony and statements to the psychologists and arguably show a greater level of functionality. *Compare* AR at 40-47 and 243-50.

Plaintiff also argues the ALJ's sole reason for discounting his testimony was the lack of supporting objective evidence.[4] P. Mem. at 16. Plaintiff does not address or even acknowledge the ALJ's two other reasons for discounting his subjective symptoms, which are which clearly provided in the ALJ's decision.

The ALJ's first reason for discounting plaintiff's testimony is that it was inconsistent with plaintiff's intellectual ability. AR at 23, 25. Plaintiff's cognitive functioning test results ranged from low average to high average. *See* AR at 23, 25, 315-

---

[4] Plaintiff writes that this was the ALJ's "remaining reason," but he did not discuss any of the other reasons the ALJ cited. *See* P. Mem. at 16.

13

16, 332-33. Although plaintiff required some special education resources in high school, there was no evidence of an intellectual disorder. *See* AR at 312, 330, 333. Plaintiff was also enrolled in an online course so that he could learn a new skill set. *See* AR at 424. The ALJ therefore properly noted that the plaintiff's statements regarding understanding were inconsistent with his intellectual ability.

Second, the ALJ found that plaintiff's medication managed his anxiety to the extent he could function at an independent level. *See* AR at 23, 25; *see also Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining SSI benefits."). The ALJ noted that plaintiff's treatment notes indicated that after he began taking medication, he reported feeling better and the medication was managing his symptoms. *See* AR at 387-91. While on medication, plaintiff also presented with normal mental status examination findings. *See* AR at 389, 391. Thus, the ALJ's second reason for discounting plaintiff's subjective symptoms was clear and convincing and supported by substantial evidence.

Finally, the ALJ discounted plaintiff's testimony because his activities of daily living reflected that he was able to function at an independent level. AR at 25; *see Valentine v. Comm'r*, 574 F.3d 685, 693 (9th Cir. 2009) (the ALJ properly discounted plaintiff's testimony because his daily activities suggested his claims about the severity of his limitations were exaggerated); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (inconsistency between a claimant's alleged symptoms and his daily activities may be a clear and convincing reason to find a claimant less credible). The ALJ noted that plaintiff was able to bathe and dress himself, prepare snacks and meals, use the stove and microwave, complete household chores, manage his own funds, and engage in social activities. *See* AR at 25. Indeed, plaintiff reported that he was able to independently perform his daily activities and testified he spent time with friends in person and online. *See* AR at 47-48, 244-48, 331. Plaintiff was also enrolled in an online course. *See* AR at 424. Plaintiff's daily activities were inconsistent with the alleged severity of his mental

impairment. Contrary to plaintiff's claims that he did not think he could work or live independently due to his anxiety, plaintiff's activities reflect his symptoms were not disabling and he had a higher level of functioning than he asserts.

In sum, the ALJ cited clear and convincing reasons supported by substantial evidence for discounting plaintiff's subjective testimony.

### C.  The ALJ Properly Considered the Lay Evidence

Plaintiff argues the ALJ failed to properly consider the Third Party Function Report submitted by his grandmother, Jeanine Dill. *See* P. Mem. at 14-15, 18-19. Specifically, plaintiff contends the ALJ's reasons for rejecting Dill's statement "simply make[] no sense whatsoever." *See id.* at 15.

Lay witness testimony falls in the category of "evidence from nonmedical sources," which ALJs consider. *See* 20 C.F.R. § 416.913(a)(4). Under the prior regulations, ALJs could only discount the testimony of lay witnesses by providing specific "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). But the revised regulation for claims filed on or after March 27, 2017 changed this standard. The revised regulations require ALJs to consider lay evidence, but do not require ALJs to articulate how they considered the evidence using the same criteria as for medical sources. 20 C.F.R. § 416.920c(d) ("We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section.").

There has been disagreement as to how or whether the revised regulations affect an ALJ's obligation to consider and evaluate lay witness opinions. The Ninth Circuit has now resolved this question in its recent decision in *Hudnall v. Dudek*, 130 F.4th 668 (9th Cir. 2025). The Ninth Circuit examined the new regulations and concluded its "'germane reasons' precedent no longer applies to claims filed on or after March 27, 2017, and in considering such claims, ALJs need not explain their reasons for discounting evidence from nonmedical sources." *Id.* at 671. In other words, an ALJ may reject testimony from a lay witness "without explanation." *Id.*

15

1    Here, even under the old standard, the ALJ did not err. The ALJ clearly
2 considered Dill's statements and provided germane reasons for discounting them. *See*
3 AR at 26. Although the ALJ did not expressly state that she rejected or discounted Dill's
4 Third Party Function Report, the implication was clear – she stated Dill's statements
5 about plaintiff were similar to plaintiff's own subjective testimony and contrary to the
6 medical evidence, including the opinions and findings of Dr. Taylor and the state agency
7 physicians. *See id*. Because the ALJ gave clear and convincing reasons for discounting
8 plaintiff's testimony and Dill's statements were similar to plaintiff's, then the ALJ's
9 reasons apply equally to Dill's report. *See Valentine*, 574 F.3d at 694. But again, it is
10 enough that the ALJ explicitly considered Dill's statements. Under *Hudnall*, the ALJ
11 was not required to explain why she rejected Dill's statements.
12   Accordingly, the ALJ did not err in considering and discounting Dill's statements.
13 **D.   The ALJ's Step Five Determination Is Supported by Substantial Evidence and**
14 **Plaintiff Waived Any Argument About the Jobs Numbers**
15   Plaintiff argues the ALJ erred at step five because: (1) the jobs identified by the
16 vocational expert ("VE") exceeded his capabilities; and (2) the identified jobs exist in
17 much lower numbers than the vocational expert testified. P. Mem. at 20-23.
18   At step five, the burden shifts to the Commissioner to show the claimant retains the
19 ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114
20 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the
21 Commissioner must provide evidence demonstrating that other work exists in significant
22 numbers in the national economy that the claimant can perform, given his or her age,
23 education, work experience, and RFC. 20 C.F.R. § 416.912(b)(3).
24   The Commissioner may meet his step five burden either by reference to the
25 Medical-Vocational Guidelines at 20 C.F.R. part 404, Subpart P, Appendix 2 or by
26 relying on the testimony of a VE and the Dictionary of Occupational Titles ("DOT") "in
27 evaluating whether the claimant is able to perform other work in the national
28 economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see*

*Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001); SSR 83-12, 1983 WL 31253, at *2; *see also* 20 C.F.R. § 416.966(d)(1) (DOT is a source of reliable job information). The DOT is the rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (discussing SSR 00-4p). In order for an ALJ to accept a VE's testimony that contradicts the DOT, the record must contain "'persuasive evidence to support the deviation.'" *Id*. at 1153 (quoting *Johnson*, 60 F.3d at 1435). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (as amended).

The ALJ here relied on the testimony of the VE to determine whether plaintiff, given his RFC, could perform jobs that exist in significant numbers in the national economy. *See* AR at 26-27, 49-50. In response to a hypothetical with the ALJ's RFC determination, the VE testified plaintiff could perform the jobs of laundry work II, hospital cleaner, and industrial sweeper. *See id*. at 49-50. The VE also affirmed her testimony was consistent with the DOT. AR at 52. Accordingly, the ALJ found plaintiff could perform the identified jobs. *See Kilpatrick*, 35 F.4th at 1192-93 (an ALJ may rely on a VE's testimony).

First, plaintiff contends he is unable to perform those jobs because they require multiple steps and decision making beyond his capabilities. P. Mem. at 20. The argument is without merit. Contrary to plaintiff's implication, the ALJ restricted plaintiff to simple instructions, not to one or two-step tasks. Reasoning level two jobs do not conflict with a limitation to simple instructions. *See, e.g.*, *Davis v. Saul*, 846 F. App'x 464, 466 (9th Cir. 2021) ("Simple work is consistent with positions requiring Reasoning Level 2."); *Davis v. Berryhill*, 743 F. App'x 846, 850 (9th Cir. 2018) (reasoning level two

17

jobs do not conflict with a limitation to simple tasks); *Gill v. Comm'r*, 2024 WL 1160500, at *14 (E.D. Cal. Mar. 18, 2024) (listing cases finding that Level 2 reasoning jobs do not conflict with a restriction to simple work). Further, one of the jobs identified by the VE – industrial sweeper – is a reasoning level one position. At bottom, plaintiff's arguments are wholly conclusory and rest entirely on his own interpretation of his capabilities and the duties of the identified jobs. But as the court has found, the ALJ's RFC determination was based on substantial evidence and the VE testified plaintiff was capable of performing the identified jobs.

Second, plaintiff asserts the VE's job numbers are unreliable and were substantially lower in SkillTRAN. *See* P. Mem. at 20-23. Defendant contends plaintiff forfeited the argument because he failed to challenge the job numbers at the hearing. D. Mem. at 12. "[W]hen a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel." *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (relying on *Meanel*, 172 F.3d 1111, which it held that claimants who are represented by counsel "'must raise all issues and evidence at their administrative hearings in order to preserve them on appeal.'"). Here, all plaintiff's counsel had to do to preserve the issue was "raise the job-numbers issue in a general sense before the ALJ," such as by "inquiring as to the evidentiary basis for" the estimated job numbers or whether the numbers were consistent with the SkillsTRAN. *Id.* at 1110. Plaintiff's counsel at the hearing before the ALJ here did none of this. Because plaintiff did not challenge the job numbers at the hearing, he waived the challenge on appeal. And even if the ALJ had not waived this issue, even by plaintiff's own figures the three occupations add up to 59,515 positions in the national economy. *See* P. Mem. at 20-22. The Ninth Circuit has stated that as few as 25,000 available jobs in the national economy constitutes work existing in significant numbers. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014). Thus, even if not waived, any error in the number of positions was harmless.

The court concludes, however, that the ALJ did not err at step five and plaintiff waived any challenge to the VE's testimony regarding the jobs numbers.

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

Dated: March 31, 2025

_____
SHERI PYM
United States Magistrate Judge